585 So.2d 949 (1991)
John JACKSON, Appellant,
v.
INVESTMENT CORPORATION OF PALM BEACH, Appellee.
No. 89-0399.
District Court of Appeal of Florida, Fourth District.
March 27, 1991.
On Motion for Rehearing August 21, 1991.
Larry Klein of Klein & Walsh, P.A., West Palm Beach, and Glantz & Glantz, Fort Lauderdale, for appellant.
William R.H. Broome of Broome, Kelley & Aldrich, P.A., West Palm Beach, for appellee.
DOWNEY, Judge.
Jackson appeals from a judgment entered upon an adverse jury verdict in his suit to recover from appellee the balance of an advertised jackpot at appellee's dog track.
The underlying factual scenario appears to be that Jackson read an ad in the Miami Herald which stated that the Pic-6 Jackpot for the last evening of the racing season would be $825,000. Jackson attended the track on that date and picked the winner in the six designated races and won the jackpot. The controversy arises because appellee intended the amount of the jackpot to be $25,000, but the advertisement in the Miami Herald stated $825,000. The mistake came about because the newspaper employee who prepared the final draft of the ad mistook appellee's draft thereof to state $825,000 instead of $25,000. Appellee had written on the face of a prior ad, "Guaranteed Jackpot $25,000 Must Go Tonight." The newspaper employee mistook the dollar sign with only one slash-mark to be the number 8 and thus, the eight hundred thousand dollar error! Appellee paid Jackson $25,000 on the night of the races but Jackson later claimed the balance, which led to this suit. At trial, the evidence made it apparent that appellee never intended to offer a jackpot of $825,000; it was clearly a mistake. While Jackson contended *950 that appellee was negligent in the draft preparation of the ad presented to the newspaper, his theory of recovery was that the advertisement constituted an offer, which he accepted, and thus he was entitled to recover. Appellee, on the other hand, contended that there was no valid offer because it never intended to make the offer included in the published ad. Furthermore, if the circumstances constituted an offer, appellee contended it revoked the offer prior to Jackson's acceptance. Finally, appellee argued that the facts did not give rise to a contract involving an offer and an acceptance. Rather, appellee argued, the ad constituted simply an "invitation to bargain," which does not give rise to a completed contract upon acceptance by the other party.
The sole point on appeal is that the trial court erred in instructing the jury as follows:
The issue for your determination is whether, as the Plaintiff claims, the Defendant Palm Beach Kennel Club intended by its advertisement in the Miami Herald to make an offer to make a guaranteed jackpot of $825,000 to whomever won the Pic-6 bet on April 25th, 1987. If the greater weight of the evidence does not support the claim of John Jackson that the Palm Beach Kennel Club intended by its Miami Herald advertisement to make an offer to pay a guaranteed jackpot of $825,000 to the winner of the Pic-6 bet on April 25th, 1987, then your verdict on the claim of John Jackson for breach of contract should be for the Defendant Palm Beach Kennel Club.
Jackson argues that said instruction over his objection was tantamount to a directed verdict because there was no evidence adduced that appellee intended the jackpot to be $825,000. Jackson concedes that appellee never intended the jackpot to be the larger amount. The point is that appellee's subjective intent was not material in determining what the contract was between the parties. As the Florida Supreme Court said in Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla. 1957), quoting from Justice Oliver Wendell Holmes:

The making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs  not on the parties having meant the same thing but on their having said the same thing. (Emphasis added.)
Professor Williston, in his work on Contracts, describes the test as:
[T]he test of the true interpretation of an offer or acceptance is not what the party making it thought it meant or intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.
1 Williston on Contracts § 94, 339-340.
It appears to us that the law, applicable to offers of a reward, is also applicable to the type of advertisement involved in this case. The offer is a mere proposal or conditional promise which, if accepted before it is revoked, creates a binding contract. Shuey v. United States, 92 U.S. 73, 23 L.Ed. 697 (1876); 67 Am.Jur.2d, Rewards § 15. The evidence presented and the legal contentions asserted below created a question for the jury whereby they could have resolved the case had it not been for the preemptive instruction given relative to appellee's intent in publishing the advertisement in its existing form. See Restatement of Contracts 2d § 46 (1981), regarding revocation of a general offer.
We have given due consideration to appellee's argument regarding the advertisement as an "invitation to bargain," but find it inapposite here. The "invitation to bargain" rule appears to be applied in advertising wherein:
Neither the advertiser nor the reader of his notice understands that the latter is empowered to close the deal without further expression by the former. Such advertisements are understood to be mere requests to consider and examine and negotiate; and no one can reasonably regard them otherwise unless the circumstances are exceptional and the words used are very plain and clear.
1 Corbin on Contracts § 25 (1963) (footnote omitted). Here, there are no further *951 negotiations indicated. If a member of the public buys a winning ticket on six races, he has accepted the offer and the parties have a contract.
We thus hold that the trial court erred in instructing the jury as it did regarding appellee's intentions and we reverse the judgment appealed from and remand the cause for a new trial.
WARNER, J., concurs specially with opinion.
HERSEY, C.J., dissents with opinion.
WARNER, Judge, concurring specially.
The issues addressed by the dissent are the very issues on which appellant sought to charge the jury. The appellant's position at trial was that intent was not the issue, because it was clear that appellee had not intended to make an offer of $825,000. The issue was one of mistake and whether or not appellee could be relieved of the mistake made by the Miami Herald or whether appellee itself failed to use due care in the placement of the advertisement. The appellant was effectively denied any opportunity to argue his case on this issue under the instructions used by the court. That is why I cannot conclude that a harmless error analysis is acceptable, especially when the appellee never moved for a directed verdict on these issues, nor was a directed verdict requested on the ground that the evidence was insufficient to show lack of due care on the part of appellee. Had it been, I would agree with the dissent, but because these issues were not properly raised below I concur in the majority opinion.
HERSEY, Chief Judge, dissenting.
As the majority points out, the test of whether there has been that "meeting of the minds" that is essential to the formation of a contract is an objective rather than a subjective one. In the words of Justice Oliver Wendell Holmes, again as noted by the majority, whether the parties have entered into a contract depends "not on the parties having meant the same thing but on their having said the same thing."
It is clear on the facts of this case that appellee intended to offer a jackpot of $25,000. As recited by the majority, "Appellee had written on the face of a prior ad, `Guaranteed Jackpot $25,000 Must Go Tonight.'" Thus, what appellee intended and said was the same: a jackpot of $25,000. It was the newspaper whose employee made the $800,000 mistake, not appellee.
If I place an advertisement that I wish to sell my Chevrolet for $5,000, can the newspaper sell my Cadillac or my Chalet for $5,000? More to the point, can the newspaper bind me to a contract to sell my Chevrolet for $500? $50? $5? I think not. And if not, the question should surely not be left to the vagaries of a jury trial.
I would affirm based upon the foregoing analysis and structure that affirmance either upon harmless error or a right for the wrong reason hypothesis.
I therefore respectfully dissent.

ON MOTION FOR REHEARING
PER CURIAM.
Denied.
DOWNEY and HERSEY, JJ., concur.
WARNER, J., concurs specially with opinion.
WARNER, Judge, concurring.
It appears that the motions for rehearing are directed at the language I used in my concurring opinion in this case. Therefore some elucidation is necessary.
In this case, the majority opinion in which I concurred held that it was error to instruct the jury that the issue in this case was whether or not appellee intended by its newspaper advertisement to offer a jackpot of $825,000. The opinion pointed out that it was clear that appellant had not subjectively intended to offer the large jackpot. Therefore giving of the instruction was tantamount to a directed verdict in favor of appellee. Despite what appellee's motion for rehearing states, nowhere in my concurrence did I "overlook" that the Kennel Club never offered to pay $825,000. Their *952 entire defense was based on that fact. What is not so obvious is whether through a series of errors and sloppiness it allowed the publication of the $825,000 advertisement.
The dissent's thesis was that appellee made no mistake and submitted an ad for a $25,000 jackpot. Only through a mistake by the newspaper alone was the ad printed for $825,000. The point of my concurrence was to challenge that view of the evidence. Appellant's entire claim was that the mistake made was a unilateral mistake caused by lack of due care on the part of the appellee in failing to properly present the ad for publication and failing to properly proofread it. Appellant claimed that where he relied on the ad to his detriment (by paying admission to the Kennel Club), relief from such a unilateral mistake could not be granted. The jury instruction, focusing on the subjective intent of appellee, precluded appellant from addressing the issue of mistake.
Appellee also challenges my concurrence on the ground that I was wrong that it had not moved for a directed verdict on the issue. I have read all of the argument on the lengthy motion for directed verdict. Appellee never moved for a directed verdict on its affirmative defense of unilateral mistake, which is in reality an equitable ground for rescission of a contract. See Maryland Casualty Co. v. Krasnek, 174 So.2d 541 (Fla. 1965). Although the appellee requested and received a directed verdict on the negligence count, it was not based on the lack of due care argument. In fact counsel for appellee stated at trial:
Quickly put, it's a count for negligence, therefore it must establish a duty, breach of duty, legal cause and damages. Focusing on the damage question, because I think it's the clearest, we could talk about the duty of Mr. Colton to the reader of an advertisement but I won't. Let's talk about damages. (R 513).
Then after appellant's argument, appellee's counsel rebutted, saying:
I haven't got into talking about whether there's a sufficient quantum of proof of negligence. I'm saying the negligence count should not go to the jury because there's been no proof of damages.
The court then granted the motion for directed verdict on the damage argument, not on the issue of no negligence. Therefore, the trial court was never asked to assess the evidence regarding whether or not appellee was negligent or failed to exercise due care in the placing of the advertisement. There was a dispute in the evidence, and appellant is entitled to present his case to a jury under proper instructions.