Louise G. Oswald, by Charles C. Trelease, her next friend, complainant-appellant,

*v.*

F. Arnault Seidler, defendant-respondent.

[Argued February 8th, 1945. Decided April 19th, 1945.]

Mr. *Charles C. Trelease* (Mr. *Norbury C. Murray,* of counsel), for the complainant-appellant.

Messers. *Bilder, Bilder & Kaufman* (Mr. *Samuel Kaufman,* of counsel; Mr. *Bernard Hellring,* on the brief), for the defendant-respondent.

The opinion of the court was delivered by

Porter, J.

The object of this bill is to set aside an *inter vivos* trust made by complainant, Louise G. Oswald, with the defendant, F. Arnault Seidler, on August 13th, 1941. The grounds alleged are that complainant was mentally incompetent, that she was unduly influenced by defendant and that she had not received independent advice concerning the effect of the deed of trust before its execution. The learned Vice-Chancellor who heard the case concluded that the testimony raised but a single issue, which was the question of mental competency of the complainant; he found that she was competent and denied the relief prayed for. She appeals from the decree so advised.

We do not concur with the views of the learned Vice-Chancellor. We think the proofs clearly establish that the complainant was mentally incompetent to understand the nature and effect of the deed of trust, and further that she had not received the benefit of adequate independent advice.

Mrs. Oswald's husband died on March 28th, 1941. She had been advised in February of 1941 that he was incurably ill and would not long survive. This information caused her to become emotionally and nervously upset. His subsequent death further greatly shocked her. In the opinion of her physicians she suffered from mental impairment, beginning in February, 1941, which became progressively worse, and which finally made advisable on August 23d, 1941, her commitment as an insane patient in the Essex County Hospital at Overbrook. She remained there as a patient for over two years. Her condition was diagnosed as manic depressive insanity.

There were no children born of the marriage. Their married life covered a period of thirty-one years and was a very happy one. Her husband and she had lived very frugally and had accumulated a fortune of about $200,000 which she inherited upon his death. She had delusions of poverty and became obsessed with the idea that she could not manage her affairs and that she should live in a "home" or the almshouse.

The nearest relatives she had were her cousins, the defendant and his older brother. She had been brought up in the Seidler family and had lived with them from the time she was two years old until her marriage. She was a few years older than the defendant. They were brought up together, and the relationship was more that of brother and sister than that of cousins. She looked to him for guidance and assistance during the illness of her husband and particularly after his death. Throughout her lifetime the defendant had been closer to her than any other person except her husband. Shortly after his death, she attempted suicide by gas which necessitated her being taken to Orange Memorial Hospital where she remained for two weeks. She later made frequent attempts at suicide by trying to purchase poison and by other means. It was necessary for the nurses and others who

attended her to constantly guard against these attempts. This suicide mania continued until after her confinement at Overbrook.

She became dissatisfied with the lawyer who had for several years represented her husband and who, after his death, represented her. She dismissed him, and upon the recommendation of the defendant's uncle, retained Judge Felix Forlenza. Under her instruction he prepared a will which she executed, making defendant her sole beneficiary. She also had him draw a general power of attorney to defendant. Finally, he prepared the deed of trust, which is the subject-matter of this action. It was executed by her on August 13th, 1941, and by defendant on August 15th, 1941. By its terms it conveyed all of her property, real and personal, to defendant to hold in trust during her lifetime, with remainder at her death to him or to such beneficiary as named in his will. He was named as trustee with power to name a successor trustee. This trust deed was irrevocable. It gave the trustee the power to pay to complainant, at his discretion, $75 a week during her life out of the income; or, also at his discretion, so much of the fund as she might require. While the conveyance was irrevocable, the defendant was not obliged to serve as trustee. He was under no obligation with respect to the conduct of the trust. He was accountable to no one for its management. It was clearly improvident and not for complainant's best interests.

The testimony of several physicians and others clearly establish the mental incapacity of the complainant during the period when this deed of trust was prepared and executed. She was greatly worried about her finances and being able to maintain herself. She suffered from delusions of poverty and desired that arrangements be made to put her in some "home" or even into an almshouse. Two physicians, who had been in attendance, certified on August 23d, 1941, only ten days after she had signed the trust deed, that she was insane and that her mental impairment had begun in February, 1941, and had slowly progressed. She was committed on that date as insane, and the inference is inescapable, from the related facts and circumstances, that she was mentally incom-

petent when she signed the deed of trust ten days before and that she was unable to understand the nature and effect of her act. For that reason the deed was invalid and must be set aside. Compare *Hammell* v. *Hyatt, 59 N. J. Eq. 174; Haydock* v. *Haydock's Ex'rs., 34 N. J. Eq. 570; Turner* v. *Houpt, 53 N. J. Eq. 526* (at *p. 544*).

But assuming that she was competent mentally to have entered into the deed of trust, we think even if that were so, the deed would be invalid and have to be set aside, because we conclude that she did not have adequate, independent advice within the meaning of the cases hereinafter cited. She first met Judge Forlenza at the Orange Memorial Hospital when he called upon her at the request of defendant who sought his influence to prevent publicity concerning her attempt at suicide. As stated, he was recommended to her by defendant's uncle. He and defendant had been acquainted for over thirty years. It seems to us, under these circumstances, that he was not the independent choice of complainant, and at any rate he was more mindful of the interests of defendant than those of complainant. This is said without reflection on his integrity or good faith. Counsel was under a duty to fully acquaint her with the nature and effect of the deed of trust. As stated, the deed contains no power in the donor of revocation or to change the remainderman or the trustee. No instructions were given by complainant to prepare the deed in these respects. Nor were these provisions discussed, nor does it appear that complainant was advised of the consequences to her of the deed or its meaning and effect. It does not appear that she understood that she had divested herself of all of her property irrevocably and had no further power to control it or its management. Even a reading of the deed by or to the complainant would not of itself acquaint her with the legal effect of it. We think the trust deed was not fair, open, voluntary and well understood by complainant, nor did she have the benefit of adequate, independent advice as required by law. Compare *Hall* v. *Otterson, 52 N. J. Eq. 522; Slack* v. *Rees, 66 N. J. Eq. 447; Smith* v. *Boyd, 61 N. J. Eq. 175;* `In re Fulper, 99 N. J. Eq.*

*293; Peppler* v. *Roffe, 122 N. J. Eq. 510; Pearce* v. *Stines, 79 N. J. Eq. 51; Colgan* v. *Allen, 110 N. J. Eq. 451.*

The decree under review is reversed, with costs, and the cause is remanded to the Court of Chancery with direction that a decree be entered setting aside the deed of trust.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, WELLS, RAFFERTY, THOMPSON, DILL, JJ. 13.