14 N.J. Super. 470 (1951)
82 A.2d 485
BROOKLYN TRUST COMPANY, A BANKING CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW YORK, COMMITTEE OF THE PERSON AND PROPERTY OF SALVATORE ZINGALE, AN INCOMPETENT PERSON, AND MARY ZINGALE, PLAINTIFFS,
v.
RUBIN PODVIN, MORRIS J. SASLAFF COMPANY, MORRIS J. SASLAFF, WILLIAM SASLAFF, CAROLINE FISCHLER, BENJAMIN A. RIMM, THE BOARDWALK NATIONAL BANK OF ATLANTIC CITY, A NATIONAL BANKING ASSOCIATION, AND SALVATORE ZINGALE, INC., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 29, 1951.
*473 Mr. Edward J. O'Mara and Mr. Frederic W. Schumann, for plaintiffs (Messrs. O'Mara, Conway & Schumann, attorneys).
Mr. Eugene N. Harris, for the defendant Boardwalk National Bank (Messrs. Kirkman, Mulligan & Harris, attorneys).
Mr. Clarence Blitz, for the defendants Rubin Podvin and Gussie Podvin, his wife.
Mr. Samuel Levinson for the defendants Benjamin A. Rimm and Caroline Fischler.
Mr. Abraham Rosenberg, for the defendants Morris J. Saslaff Co., Morris J. Saslaff and William Saslaff.
HANEMAN, J.S.C.
This case involves an attempt to set aside a transaction entered into between Salvatore Zingale (an alleged mental incompetent) and Rubin Podvin and Gussie Podvin, involving the purchase by the said Salvatore Zingale of a parcel of realty situate in Atlantic City, New Jersey. The action seeks to restore the incompetent to the financial position he enjoyed prior thereto, and hence the realtor who consummated the sale and the mortgagee who advanced funds to complete the sale are also made defendants, so that complete relief may be obtained.
The facts in connection herewith are as follows:
On March 17, 1945, one Salvatore Zingale was committed to Stamford Hall, a Connecticut institution for the treatment of mental disorders. He had schizophrenia of a paranoid type. He lacked, as the doctors testified, insight. He had grandiose ideas. His mental condition was such that at times, at least, a layman would not, by mere observation, be warned thereof. At this hospital he received electric shock treatments and after six weeks was released in the custody of his wife. Although then manageable, he was not completely recovered and was still without normal judgment.
*474 During all of this time he was engaged in the jewelry business in Brooklyn, New York.
On February 2, 1948, being then in Atlantic City, New Jersey, he entered into an agreement to purchase the Hotel Davenport, located in said city. The total consideration was $54,000, of which sum he made a down payment of $4,000. On February 6, 1948, having returned to Brooklyn, he was, because of his agitation and unruliness, treated by a physician, who committed him to a mental institution at Astoria, Long Island, New York, on February 7, 1948. On February 20, 1948, Morgan and Lockwood, lawyers of New York City, mailed a letter, a copy of which follows, to Morris Saslaff, agent of the Podvins:
"We have been consulted by the wife and a son of Salvatore Zingale with respect to a deposit which Mr. Zingale made with you on account of a purported purchase of the Hotel Davenport, 116 South Carolina Avenue, Atlantic City, New Jersey. They have furnished us with medical evidence that Mr. Zingale is incompetent and has been so for some time. They did not have a copy of any contract or other memorandum signed by Mr. Zingale, who is presently under care in a mental institution. Any agreement which Mr. Zingale may have signed appears to be wholly improvident and without binding legal effect.
In view of these facts, please arrange to have returned the $4,000 deposit which Mr. Zingale made for the purported purchase of the Hotel Davenport, and for which you issued your receipt on February 2, 1948.
Please let us know if any expenses have been incurred in behalf of Mr. Zingale so that we may give the matter of their payment consideration."
The Podvins admitted having received notice thereof.
On February 27, 1948, the same New York law firm wrote a letter to the Boardwalk National Bank of Atlantic City, which reads as follows:
"We have been consulted by the wife and son of Salvatore Zingale with respect to a purported contract for the purchase of Hotel Davenport, 116 South Carolina Avenue, Atlantic City, N.J., and an application for a mortgage loan thereon which Mr. Zingale made with you.
They have furnished us with medical evidence that Mr. Zingale is incompetent and has been so for some time. He is presently under care in a mental institution."
*475 In addition, Salvatore Zingale's wife and son orally notified the defendants Podvin of his mental incompetency and financial inability to complete the settlement.
On March 2, 1948, Podvin's counsel forfeited Zingale's $4,000 deposit for failure to make final settlement.
On March 13, 1948, Zingale was released from the mental institution for the reason stated by Dr. Hand  "not because he was well, but because it seemed possible to manage him as an ambulatory patient."
Zingale had a number of electric shock treatments and consultations with psychiatrists thereafter, the last of which was on March 25, 1949, at which time it was the examining physician's opinion that he was irresponsible.
On March 9, 1949, Zingale retained Benjamin Rimm, a respected member of the Bar of Atlantic City, New Jersey. He then discussed his original agreement to purchase the Hotel Davenport and expressed his intent to complete said purchase. I am satisfied that Rimm had no question of his mental condition and that Zingale did not exhibit any evidence of his mental abnormalities to him. Consistent with Zingale's expressed desire to form a corporation to act as his alter ego in the transaction, Rimm caused a corporation to be organized. Thereafter, on July 6, 1949, Salvatore Zingale, Inc., entered into an agreement with the Podvins to purchase the Hotel Davenport on the following terms:

 Total price $60,674
 Down payment 7,673
 Cash at settlement 31,000
 Credit for $4,000 paid on prior
 agreement by Zingale 4,000
 Credit for 2 leases from buyer to seller 10,000
 Purchase money mortgage 8,000

At the time of, and for the purpose of making settlement, which was had on July 22, 1949, the Boardwalk National Bank of Atlantic City furnished $24,000 for which it received a mortgage as collateral security.
*476 The Boardwalk National Bank denied that Mrs. Zingale had personally notified any of its employees of Salvatore Zingale's mental condition in 1948. Walter Drumm, assistant cashier and permanent secretary of the real estate and appraisal committee, testified that he had handled the appraisal and commitment of Zingale's application for a loan from the Boardwalk National Bank in 1948 and that he received the letter above referred to from Morgan & Lockwood, which letter was attached to the original application. He did not recall the letter at the time of the subsequent application in 1949, which letter had been filed in an inactive file.
On August 3, 1949, Zingale was admitted to Kings County Hospital, New York, at 2 A.M., because of his mental condition and because his family could not cope with him.
The test to be applied, in the absence of proof of fraud, in cases of this kind, is whether the person whose act is brought into question possessed sufficient ability at the time he acted to understand in a reasonable manner the nature and effect of his act or the business he was transacting. Oswald v. Seidler, 135 N.J. Eq. 490 (Ch. 1944), reversed on other grounds, 136 N.J. Eq. 443 (E. & A. 1945); Leick v. Pozniak, 135 N.J. Eq. 67 (Ch. 1944); Miller v. Miller, 138 N.J. Eq. 225 (E. & A. 1946).
I find from the testimony that Salvatore Zingale was mentally incompetent to conduct business on July 6, 1949, the date of the agreement here involved, and that such incompetency has continued to date. I was especially impressed by the testimony of Doctor Hand.
I am satisfied that the said Salvatore Zingale conducted himself in his contacts with the defendants in such a manner as not to put them on notice, solely thereby, of his abnormal mental condition. However, having received the two letters above referred to, they were put upon such notice as would require a prudent person to make inquiry concerning his mental condition. The fact that no employee of the Boardwalk National Bank re-read the letter of February 27, 1948, at the time of the second application is no defense. *477 Having once had notice, it was bound to make adequate inquiry. It could not ignore the warning received and presume to judge his mental capacity. Having failed to make such inquiry, the contract must fail.
The law in this State concerning the effect of the incompetency of persons with whom a contract has been made has been settled since Drake v. Crowell, 40 N.J.L. 58 (Sup. Ct. 1878), in which the court said:
"The law in this state is settled, that contracts with lunatics and insane persons are invalid, subject to the qualification that a contract made in good faith with a lunatic, for a full consideration, which has been executed without knowledge of the insanity, or such information as would lead a prudent person to the belief of the incapacity, will be sustained. Matthiessen v. McMahon's Admr., 9 Vroom 536; Eaton v. Eaton, 8 Vroom 108."
See also Matthiessen and Weichers Refining Co. v. McMahon's Admr., 38 N.J.L. 536 (E. & A. 1876); Hillsdale National Bank v. Sansone, 8 N.J. Super. 497 (Law Div. 1950).
The defense that the purchase was made by a corporation and not by the incompetent individual will avail the defendants nothing. The corporation was the admitted alter ego of Salvatore Zingale, who was the owner of all of the stock. All of the cash advanced, aside from that furnished by the Boardwalk National Bank, was Salvatore Zingale's. The promissory note and the bond given to the Boardwalk National Bank were personally endorsed and signed by Salvatore Zingale.
Our courts will not permit the doctrine of corporate entity to be used for the purpose of defeating justice, but will pierce the veil. Telis v. Telis, 132 N.J. Eq. 25 (E. & A. 1942).
The transaction of July 6, 1949, is therefore void. The defendants Podvin are directed to repay to the plaintiff the cash actually advanced by Salvatore Zingale personally, except for $4,000, which will be hereafter treated, and to the Boardwalk National Bank the $24,000 advanced by it for the purpose of completing settlement. The promissory note and *478 the second mortgage held by the Podvins will, as well, be cancelled. The plaintiff will be granted a first lien to secure the payment above set forth upon the realty and personalty involved, and the defendant Boardwalk National Bank will be granted a lien, subject to that of the plaintiff, to secure the payment to it of $24,000 upon the realty and personalty involved.
Judgment will also be entered for the sum of money received by defendants Saslaff as real estate brokers in connection with the transaction of July 6, 1949, and their counterclaim is disallowed for the above reasons.
Insofar as the $4,000 is concerned, which was paid on February 2, 1948, and for which credit was given on account of the purchase of July 6, 1949, I find as a fact that the former agreement was made in good faith, for a full consideration, without knowledge or information which would lead the defendants Podvin to the belief of the incapacity of Salvatore Zingale; hence there can be no recovery by the plaintiff.
Insofar as the counterclaim for $400 of Benjamin Rimm against the plaintiff for legal services rendered to Salvatore Zingale is concerned, I find as a fact that the services rendered were reasonably worth that sum and that the agreement under which these services were rendered was made in good faith, for a full consideration, without knowledge or information which would lead defendant Benjamin Rimm to the belief of the incapacity of Salvatore Zingale, and the said Rimm should have a judgment in that amount.
Judgment will be entered consistent with the foregoing.