CHARLES PERL, Respondent, v CHANA PERL et al., Appellants.

First Department, March 3, 1987

APPEARANCES OF COUNSEL

*A. David Stern* for appellants.

*Richard J. Kurtz* of counsel *(D'Addario & Kurtz,* attorneys), for respondent.

### OPINION OF THE COURT

WALLACH, J.

This case calls upon us to confront the constitutional requirement of separation of church and State in the context of the orthodox Jewish faith, which grants the male partner to the marital union a virtual veto over a religious divorce. The appropriate division of religious and secular power has long been a matter of concern to civilized communities, at least since the ancient advice provided to the perplexed Judean taxpayers to render unto Caesar the things that are Caesar's and unto God the things that are God's. During the next two millennia considerable blood has been spilled over which things belonged where. For the reasons stated below we hold that where either spouse has invoked the power of the State to effect a civil dissolution of a marriage, an oppressive misuse of the religious veto power by one of the spouses subjects the economic bargain which follows between them to review and potential revision. But that same conduct does not expose the overreaching party to additional liability in tort.

Plaintiff Charles Perl (husband) and defendant Chana Perl (wife) were married in an orthodox Jewish marriage ceremony in November 1967. After a childless union of some 12 years they separated, and eventually were issued mutual judgments of divorce in Kings County Supreme Court on June 22, 1982, with all financial matters pertaining to equitable distribution of the couple's marital property being deferred for future disposition. To that end proceedings were held before Honorable Salvatore DeMatteo as Special Referee in early July 1982, which culminated in a stipulation of settlement in open court upon the record on July 8, 1982, with an amendment thereto executed by the parties four days later.

According to the pleadings and affidavits of the wife on this motion for summary judgment, the distribution of the marital property before the Referee constituted nothing less than a total surrender of her rights brought about by the husband's duress and destruction of her independent willpower. The stipulated terms required her to deliver to the husband (1) all of the remaining securities jointly owned by the parties; (2)

payment of $35,000 to compensate the husband for jointly owned securities she had previously sold; (3) an additional sum of $30,000 payable in monthly installments of $2,000 with acceleration of the balance due in the event of default, this obligation being guaranteed by promissory notes executed and delivered by Charles Rosner, the wife's uncle who is the other individual defendant herein; (4) a deed conveying her one-half interest in the marital home; (5) title to her automobile; and to cap it all off (6) her engagement ring and other personal jewelry. The only economic consideration received by the wife was the husband's quitclaim of any interest in two corporations, C.P. Jewelry, Inc., and Famous Chains, Inc. However, she further alleges that these concessions were wholly illusory, C.P. Jewelry, Inc., being defunct and valueless by reason of the husband's stealthy raid in 1980 on the corporate safe when he looted it of approximately $170,000 in cash and gold, and Famous Chains, Inc. (the corporate defendant herein) being an enterprise entirely created and owned by her as separate property after the separation of the parties. To be sure, the husband vigorously disputes these assertions of the wife, contending, *inter alia,* that the marital home was a gift from his parents, and that he relinquished a valuable interest in Famous Chains, Inc., as his *quid pro quo.* This aspect of the controversy simply poses a triable issue. What appears clear from the structure of the stipulation is the central importance to the wife of a Jewish religious divorce (a Get); indeed the husband's obligation to furnish it is described as "the prerequisite for the settlement reached herein", and his attorney is required to hold everything delivered by the wife in escrow, to be returned to her "if a Jewish divorce is not given within ten days." The husband made timely delivery of the Get, and the stipulated property, including the postdated checks and promissory notes, was released to him.

When the wife and her uncle-guarantor dishonored both the postdated checks issued by Famous Chains, Inc., and the escrowed promissory notes the husband commenced this action in New York County, his first cause of action seeking a $34,000 judgment against the wife on the stipulation, against the corporation on the checks, and against the uncle upon the notes. By way of defense to the husband's motion for summary judgment on his first cause of action, in their second affirmative defense and three counterclaims, defendants sought to defeat this liability by allegations of coercion and duress—namely, that the husband, knowing that his wife was of the

orthodox Jewish faith and could never remarry or bear children without a Get, and aware that only he, under Jewish law, could permit such an instrument to issue, used this knowledge to crush the wife's resistance to his extortionate financial demands and that she, because of her desperation to be free to remarry, bear children, and live a normal life, simply capitulated.

Special Term granted the husband's motion for summary judgment against all three defendants and directed judgment against them in the sum of $34,000, striking the first affirmative defense based upon the Statute of Frauds, the second defense based upon duress and overreaching, and dismissed the first three counterclaims for, respectively, (1) tort damages based upon the intentional infliction of severe emotional distress; (2) vacatur of the stipulation and the underlying judgment of divorce in Kings County; and (3) imposition upon the husband of a constructive trust with respect to the property delivered to him under the stipulation, and a declaratory judgment that the checks and notes are void, and other related relief. We affirm the dismissal of the first counterclaim, but reverse Special Term's award of summary judgment to the husband and its dismissal of the second and third counterclaim. The Statute of Frauds defense is no longer pressed.

Special Term found the wife's contentions with respect to duress and overreaching to be precluded as a matter of law by the following recital in open court by the husband's counsel who dictated the entire stipulation into the record: "each of the parties has had the opportunity to reflect upon the terms of the settlement dictated upon this record, having discussed it with their respective counsel, their accountants, family and friends and do enter into this stipulation of settlement voluntarily without any duress, fraud or coercion."

The unequal allocation of power between spouses to terminate a religious marriage—particularly where the partners are of the Jewish faith—has received the attention of the courts (*Avitzur v Avitzur*, 58 NY2d 108; *"Rubin" v "Rubin"*, 75 Misc 2d 776; *Chambers v Chambers*, 122 Misc 2d 671); the Legislature (Domestic Relations Law § 253), and the Executive, from which it is possible to discern an articulated public policy. In 1983 (too late to have any application to this case) the Legislature addressed this problem, imposing a statutory duty upon any marital partner seeking a divorce to a marriage solemnized by specified religious officiants to obtain, as a

condition precedent for civil severance of the marital bond, a sworn statement from the moving party that he or she has taken or will take "prior to the entry of final judgment, all steps solely within his or her power to remove any barrier to the defendant's remarriage following the annulment or divorce" (Domestic Relations Law § 253 [2] [i]). In his memorandum approving the bill, the Governor wrote:

"This bill was overwhelmingly adopted by the State Legislature because it deals with a tragically unfair condition that is almost universally acknowledged.

"The requirement of a get is used by unscrupulous spouses who avail themselves of our civil courts and simultaneously *use their denial of a get vindictively or as a form of economic coercion.*

"Concededly this use of our civil courts unfairly imposes upon one spouse, usually the wife, enormous anguish." (1983 McKinney's Session Laws of NY, at 2818, 2819; emphasis added.)

This authoritative description of legislative intent is remarkably congruent with the allegations made by the wife here as the victim of "economic coercion" inflicting "enormous anguish". Special Term made no quantitative assessment of her coercion claim, but gave conclusive effect to the express negation of coercion and duress contained in the stipulation. In doing so, Special Term overlooked the very real possibility that this routine formulary was as much the product of coercion as any of the substantive provisions contained in the document. It is true that *"[A]bsent a showing of fraud, mistake, duress or overreaching,* an oral stipulation of settlement of property issues in a matrimonial action, if spread upon the record and *found to be fair and reasonable,* will not be disturbed by the court". *(Alexander v Alexander,* 112 AD2d 121, 122; emphasis added.) But, as the Court of Appeals held in *Matter of Frutiger* (29 NY2d 143, 150), where the parties can be restored to their former position, and the stipulation is inequitable, it will be dissolved, and (citing *Yonkers Fur Dressing Co. v Royal Ins. Co.,* 247 NY 435, 445), a stipulation will not be maintained where to do so would work injustice and inflict a wrong. "There is a strict surveillance of all transactions between married persons * * * These principles in mind, courts have thrown their cloak of protection about separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and

equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity." *(Christian v Christian,* 42 NY2d 63, 72.) Furthermore, this is not a situation where delayed action by the wife was so extensive as to give rise to an inference of ratification *(cf., Stoerchle v Stoerchle,* 101 AD2d 831 [21 months]; *Bethlehem Steel Corp. v Solow,* 63 AD2d 611 [six years]); here, the wife asserted her claim in her first responsive pleading only eight months after the entry of the stipulation. What is more, a divorce settlement tainted by duress is void *ab initio (Angeloff v Angeloff,* 56 NY2d 982), not merely voidable, and is, therefore, not subject to ratification by the mere passage of time. Also, while it would have been desirable to litigate this issue in Kings County where the stipulation was made and the divorce decree rendered, it is the husband himself, although a resident of Kings County where all the other parties reside, who invoked the New York County venue, and there is thus no barrier to a disposition of all the issues in New York County *(Revona Realty Corp. v Wasserman,* 4 AD2d 444).

With respect to the wife's first counterclaim based upon the intentional infliction of extreme emotional distress, we affirm the dismissal of that cause of action by Special Term. In doing so, we need not subscribe to the conclusion of that court that the husband's conduct alleged here fits the characterization found in *James v Saltsman* (99 AD2d 797, 798), of "petty oppressions or other trivial incidents which must necessarily be expected and are incidental to modern life no matter how upsetting." We do note, however, that the conduct, however productive of mental distress to the wife, occurred entirely in the context of bitter matrimonial litigation focused toward specific economic objectives, where the component of mental distress became a regrettable by-product. While that conduct may fatally flaw the bargain and require its dissolution, we find it to fall outside "the boundaries of this emerging ground of tort liability." *(Fischer v Maloney,* 43 NY2d 553, 557.) To hold otherwise would fasten the risk of liability in tort upon any spouse who refused to furnish a Get, upon religious grounds in whole or in part, and thereby entangle the courts in an exploration of both the validity and sincerity of a position grounded in ecclesiastical law. Recognition of the doctrine of separation of church and State requires that such terrain remain *terra incognita* to the courts, which "should not resolve such controversies in a manner requiring consider-

ation of religious doctrine". *(Avitzur v Avitzur,* 58 NY2d 108, 114, *supra.)* A trial of the equitable issues involved in the viability of the stipulation, which we now direct, must focus upon the diminished capacity of the alleged victim-wife brought about by the husband's stance and the objective unfairness of the bargain in contrast to a tort action where the intent of the husband would be pivotal. The motives of the husband here and the source of inspiration for this action will be entirely tangential to the validity of the settlement.

Accordingly, the resettled order of the Supreme Court, New York County (Allen Murray Myers, J.), entered November 13, 1985, which granted plaintiff summary judgment on the first cause of action in the amount of $34,000, dismissed the two defenses set forth in the answer, and dismissed defendants' first, second and third counterclaims, should be modified, on the law, to deny summary judgment on the first cause of action, and to deny dismissal of the second affirmative defense and the second and third counterclaims, and otherwise affirmed, without costs. Judgment of the same court, entered March 21, 1986, pursuant to the aforesaid order, should be reversed, on the law, without costs, and vacated.

KUPFERMAN, J. P. (dissenting in part). I would affirm.

While the religious aspect adds a fillip, the simple contention here in opposition to the husband's claim on the promissory notes is duress in that to obtain the husband's agreement to a divorce, substantial economic concessions had to be made to him.

There is no contention of deceit or withholding of information. *(See, Christian v Christian,* 42 NY2d 63, 72.) In this matter both parties were represented by counsel and voluntarily entered into a stipulation of settlement in open court. No one is even close to becoming a public charge. *(See,* General Obligations Law § 5-311.)

For the court now to require a trial of the allegations of such pressure is to involve policing of every divorce arrangement where one party is more anxious than the other to achieve a dissolution and makes economic concessions to obtain it. Here, the husband may have been the beneficiary. In other situations it could be the wife. The more concessions you make, the greater the likelihood that, having obtained your *quid pro quo* in the divorce, you can then proceed to disavow the economic commitment and have a court aid in the approach.

SULLIVAN, ROSENBERGER and ELLERIN, JJ., concur with WALLACH, J.; KUPFERMAN, J. P., dissents in part in an opinion.

Resettled order, Supreme Court, New York County, entered on November 13, 1985, modified, on the law, to deny summary judgment on the first cause of action, and to deny dismissal of the second affirmative defense and the second and third counterclaims, and otherwise affirmed, without costs and without disbursements, and judgment of said court, entered on March 21, 1986 is reversed, on the law, and the judgment is vacated, without costs and without disbursements.