OPINION OF THE COURT
William Rigler, J.
In this matrimonial action, this court is being asked to define the boundaries between a secular matrimonial action *790 and the severance of religious ties between a married couple. This court had bifurcated the trial of this action, hearing the issue of fault first. Based upon the evidence presented, plaintiff wife was granted a divorce from defendant husband based upon his cruel and inhuman treatment of her. The decision was dated July 25, 1991. The trial on the economic issues of the matrimonial action was set down for trial shortly thereafter. After several adjournments of the trial on the economics plaintiff moved to have the divorce finalized in a judgment while reserving the economic issues for future determination. Her motivation for the early entry of the judgment was, in essence, twofold. First, and foremost, she complained that her standing in her community was in limbo due to the decision on the divorce but the judgment not being entered. Second, due to the lack of judgment and in an attempt to circumvent this court, defendant commenced a proceeding in Israel. That action was dismissed but not before plaintiff was harmed by being detained in Israel.
Defendant objected to the early entry of judgment. He claimed it was being sought solely for litigation purposes. He asserted that she just wanted to put pressure on him to settle the case.
The court granted plaintiff’s application on December 10, 1991. A judgment of divorce was entered on December 11, 1991. The economic issues were reserved for future determination.
To some degree defendant’s concern about an early entry of judgment was borne out. This present application by plaintiff was made on the eve of trial of the economic issues. The motion is based in large part on the fact that the judgment of divorce was already entered.
The parties to this action are Orthodox Jews. They were married in a religious ceremony on May 8, 1966. The parties have not undergone a divorce under Jewish law. Specifically, plaintiff has not received a "Get” (document of divorce) from defendant.
Under Orthodox Jewish law the marital ties between a husband and wife are severed only once the husband gives the wife a document known as a Get. The granting of the Get is virtually solely in the control of the husband. If he refuses to deliver the Get to the wife she is not permitted to remarry within the Jewish faith. She may not even date. A woman who is caught in the position of not receiving a Get is referred to as "agunah” or "chained.”
*791 A wife who has a husband who refuses to give a Get may, under Orthodox Jewish law, attempt to have the husband summoned to a religious tribunal or Beth Din. Once at the Beth Din the tribunal can hear testimony and determine if a Get should be given. However, the tribunal itself cannot give the Get, it still must come from the husband.
Obviously, this procedure gives tremendous, power to a husband in a divorce proceeding. Without the husband’s consent the wife will not be free to remarry, thus he can dictate the terms of any agreement.
The disparity of power has not gone unnoticed (see, Avitzur v Avitzur, 58 NY2d 108, cert denied 464 US 817; Perl v Perl, 126 AD2d 91; Golding v Golding, 176 AD2d 20). As the Appellate Division, First Department, noted in Perl v Perl (supra, at 94-95):
"The unequal allocation of power between spouses to terminate a religious marriage — particularly where the partners are of the Jewish faith — has received the attention of the courts (Avitzur v Avitzur, 58 NY2d 108; 'Rubin’ v 'Rubin’, 75 Misc 2d 776; Chambers v Chambers, 122 Misc 2d 671); the Legislature (Domestic Relations Law § 253), and the Executive, from which it is possible to discern an articulated public policy. In 1983 * * * the Legislature addressed this problem, imposing a statutory duty upon any marital partner seeking a divorce to a marriage solemnized by specified religious officiants to obtain, as a condition precedent for civil severance of the marital bond, a sworn statement from the moving party that he or she has taken or will take 'prior to the entry of final judgment, all steps solely within his or her power to remove any barrier to the defendant’s remarriage following the annulment or divorce’ (Domestic Relations Law § 253 [2] [i]). In his memorandum approving the bill, the Governor wrote:
" 'This bill was overwhelmingly adopted by the State Legislature because it deals with a tragically unfair condition that is almost universally acknowledged.
" 'The requirement of a get is used by unscrupulous spouses who avail themselves of our civil courts and simultaneously use their denial of a get vindictively or as a form of economic coercion.
" 'Concededly this use of our civil courts unfairly imposes upon one spouse, usually the wife, enormous anguish.’ (1983 *792 McKinney’s Session Laws of NY, at 2818, 2819; emphasis added.)”
Thus, under the statute (Domestic Relations Law § 253) a spouse seeking a civil divorce must remove the barriers to remarriage of the other spouse. Specifically, a Jewish man who is a plaintiff must give a Get if ordered to by a Beth Din or voluntarily give a Get without a hearing before a Beth Din. If he refuses to comply with either the husband will be denied a civil divorce.
Furthermore, the courts have consistently held that a separation agreement or stipulation of settlement entered into between two parties may be subject to review for duress or overreaching. This review will include the question of whether the control over the Get was used by the husband to coerce the wife to yield to a settlement which is more beneficial to the husband (see, Golding v Golding, supra; Perl v Perl, supra). In Golding the trial court, after a hearing, determined that the husband exploited " 'the power differential between the parties, so as to completely dominate a process which should have entailed honest negotiating, the defendant engaged in "inequitable conduct” which "vitiate[s] the execution of the agreement”. Christian v. Christian, 42 NY2d at 72.’” (Golding v Golding, supra, at 22.) The Appellate Division then affirmed the trial court’s determination not to recognize the agreement entered into under threat of withholding the Get.
In the present case, this court is faced with another premutation of the power of the Get. The husband herein was the defendant in the divorce action. Thus, Domestic Relations Law § 253 does not apply. Furthermore, there was no agreement. Thus, the relief of vitiating an agreement entered into under duress is not available. Rather, plaintiff wife now claims that due to the inherent power that defendant husband has over the granting of the Get, it would be inequitable to grant him equitable distribution while he still holds the Get. (Her claim is that once equitable distribution is granted by the secular court the power to extract more for the Get still exists.) This she asserts is inequitable. She claims that as a court of equity this court should withhold equitable relief (deny a trial on equitable distribution) until equity is done. She asserts that defendant is in fact withholding the Get.
Defendant objects to plaintiff’s claims. He asserts that he is merely continuing the case which plaintiff started. He did not commence the action, thus, he should not be precluded from *793 ending it. He is merely seeking the relief available due to plaintiff succeeding in the fault aspect of the case. Additionally, he claims that he is not holding the Get hostage. Furthermore, he warns the court that it may be treading into the quagmire of church-State relations.
Analysis
It is without question that when courts must touch upon questions of religious concerns, they may not consider religious doctrine (see, Presbyterian Church v Hull Church, 393 US 440, 449; Serbian Orthodox Diocese v Milivojevich, 426 US 696, 709; Jones v Wolf, 443 US 595, 603; Golding v Golding, supra). However, the courts may use "neutral principles of law” to resolve disputes touching on religious concerns. (Jones v Wolf, supra, at 602; see, Avitzur v Avitzur, supra, at 115 [contract law used for recognition of a ketubah (Jewish marriage contract)]; Aziz v Aziz, 127 Misc 2d 1013 [contract law used for recognition of a mahr (Islamic marriage contract)].)
There is no real dispute that the enactment of the Equitable Distribution Law (Domestic Relations Law § 236 [B]) did nothing to circumvent the traditional equity powers of the matrimonial bench. In fact, if anything, the statute granted more equity power to the court (the court could now look behind title to divide property). The very name of the statute implies the purpose of the statute, to do equity (see, e.g., Majauskas v Majauskas, 61 NY2d 481, 489).
When one focuses on the actual equitable distribution portion of the statute (Domestic Relations Law § 236 [B] [5]) the equity power of the court is specifically set forth. Subdivision (5) (c) states: "Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties.”
The courts in equitably dividing the marital property must consider 13 factors (Domestic Relations Law § 236 [B] [5] [d]). Most of these factors include determinations in the realm of equity. Most importantly, factor number 13 requires that the court consider "any other factor which the court shall expressly find to be just and proper.” Obviously, this factor permits the court to review all the equities in the case when dividing marital property. The Appellate Division, Second Department, determined as much in Langdon v Langdon (138 AD2d 358, lv denied 73 NY2d 702), in which the court held: "The trial court properly denied equitable distributive relief to *794 the defendant husband under the clean hands doctrine, since Domestic Relations Law § 236 (B) (5) (d) (13) requires the court to do equity by considering 'any other factor which the court shall expressly find to be just and proper’ (cf., Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:14, at 236).” (See also, Cappiello v Cappiello, 110 AD2d 608, affd 66 NY2d 107; Wilson v Wilson, 101 AD2d 536, appeal dismissed 63 NY2d 768.)
Obviously, the misuse of a power differential between the parties be it a monetary differential or otherwise (i.e., the withholding of a Get or withholding one’s appearance before a Beth Din) can be taken into account by a court in equity. Thus, such misuse of a power differential may be a factor in determining equitable distribution under the catch-all clause (13) of Domestic Relations Law § 236 (B) (5) (d).
However, such a determination is a factual matter which requires a hearing. The application of the equitable distribution factors is part of the trial-in-chief of the matrimonial action itself. One spouse’s actions in relation to a Get may be subject to review in the equitable distribution portion of a matrimonial action. Hence, those actions may be considered by the court when it equitably distributes the marital property.
The application of plaintiff herein requests that the court short-circuit the regular mechanisms and deny defendant equitable relief (equitable distribution) pretrial and solely on papers. This jump the court will not take. The court will not grant plaintiff’s application to stay the trial on the economic aspects of this case until defendant gives plaintiff a Get. That request is far beyond the powers of this court. However, upon the trial of the economic issues, the parties may seek to introduce evidence concerning their actions in relation to the Get so that the court can reach an equitable decision on the distribution of property.
Accordingly, it is ordered that plaintiff’s application is denied in its entirety without prejudice to raise the circumstances surrounding the Get at trial. The trial of the economic issues shall take place on the adjourned date. All previous orders of this court remain in effect.