278 N.J. Super. 218 (1994)
650 A.2d 996
SHIRLEY SEGAL AND ERICA AMSEL, PLAINTIFFS-APPELLANTS-CROSS-RESPONDENTS,
v.
HERMAN SEGAL AND LILLY SEGAL, DEFENDANTS-RESPONDENTS-CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 2, 1994.
Decided December 19, 1994.
*219 Before Judges SKILLMAN, WALLACE and KLEINER.
Sharyn M. Witlin, attorney for appellants-cross-respondents.
Herman Segal and Lilly Segal, respondents-cross-appellants, submitted a brief pro se.
The opinion of the court was delivered by SKILLMAN, J.A.D.
This litigation involves competing claims to ownership of a residence located at 410 9th Street in Lakewood Township. Plaintiff Shirley Segal and her late husband Israel Segal, both Orthodox Jews, acquired this property in 1981. After Shirley[1] and her husband began experiencing marital difficulties, Shirley filed a *220 complaint for divorce in New York.[2] Around February 1, 1987, Shirley signed a marital settlement agreement, which provided, among other things, that the Lakewood property would be conveyed to her husband "forthwith." Shirley alleges that she signed this agreement under duress, the nature of which is discussed in greater detail later in this opinion. On March 25, 1987, Shirley and Israel signed a deed conveying the property to Israel's mother, defendant Lilly Segal. Shirley alleges that her signature on this deed also was secured under duress and that she believed at the time that she was conveying the property to Israel rather than to Lilly. Twelve days after Shirley and Israel signed this deed, Israel was murdered. On January 24, 1988, Shirley purportedly signed a second deed conveying the property to Lilly, which denominated Shirley as "Trustor" and Lilly as "Trustee." Shirley alleges that what purports to be her signature on this deed is a forgery. On January 25, 1988, Shirley executed a deed conveying the property to herself and her mother, plaintiff Erica Amsel.
Plaintiffs filed this suit on September 12, 1988, alleging that the deed which Shirley purportedly executed on January 24, 1988 had been forged by defendant Herman Segal and seeking to have that deed "declared null and void, and stricken from the records of the Ocean County Clerk." Plaintiffs also sought money damages. Lilly filed a counterclaim, alleging that she was the owner of the property by virtue of the deed Shirley and Israel executed on March 25, 1987.
At trial, Shirley testified that Israel had refused to consent to a Jewish ecclesiastical divorce known as a "Get," see Minkin v. Minkin, 180 N.J. Super. 260, 434 A.2d 665 (Ch.Div. 1981), unless she conveyed the Lakewood property to him, waived any claim to child support or alimony, disclaimed any interest in all marital assets including Israel's business, and in addition paid him $25,000. *221 She testified that a Get would not have been granted unless her husband consented and that if she failed to obtain a Get, she would be unable to remarry or even to date other men. Shirley's father, David Amsel, corroborated her testimony that Israel refused to consent to a Get unless Shirley acceded to all of his demands and Mr. Amsel agreed to support the children of the marriage and pay Israel $25,000. Shirley also testified that Herman Segal, Israel's brother, threatened her by firing three bullets into a picture on the wall of her house about a month before she signed the marital settlement agreement, and that Israel intimidated her by driving recklessly with their children and her in the car until she signed the agreement. She further testified that while the agreement was notarized by Herman, who was licensed to practice law in New York at the time, he was not in fact present when she signed the agreement. In addition, Rabbi Rottenberg, Shirley's representative at the "Beth Din" which granted the Get, testified that the rabbis had not undertaken to equitably distribute the parties' assets but had simply awarded Israel everything that he sought including the Lakewood property. Rabbi Rottenberg expressed the opinion that Shirley's consent to the marital agreement had been obtained through duress and that the agreement was not fair.
However, Rabbi Shapiro, another rabbi who participated in the Beth Din, denied that Israel refused to give his wife a Get unless she and her father consented to all his financial demands. Rabbi Shapiro also testified that the terms of the Get had been negotiated between the parties, in particular between David Amsel and Israel.
The trial court found that "extreme pressures" had been placed upon Shirley to accede to Israel's financial demands, including her need to obtain his consent to a Get and Herman's and Israel's threats. The court said that the agreement was subject to "possible challenge" because of these pressures, but that it was not "void on its face." The court further found that the "trust deed" dated January 24, 1988, was "valid" and that Lilly holds the *222 property as "trustee" for Shirley's children pursuant to that deed. Accordingly, the court entered judgment dismissing plaintiffs' complaint and Lilly's counterclaim and ordering that "title [to] the house at 410-9th Street, Lakewood, New Jersey is to be in the name of Lilly Segal as trustee for Cheryl, Arthur and Daniella Segal." Plaintiffs appeal from the part of the judgment dismissing their complaint and defendants cross appeal from the part dismissing Lilly's counterclaim.
We conclude that the "extreme pressure" which the trial court found to have been exerted upon Shirley to agree to the terms of the Get, including the conveyance of the Lakewood property, constituted duress which requires the invalidation of the March 25, 1987 deed conveying the property to Lilly. We are also satisfied that there is sufficient credible evidence to support the trial court's implicit finding that Shirley's signature on the January 24, 1988 deed conveying the property to Lilly as "trustee" was not forged. However, the trial court failed to make any finding as to whether Shirley signed that deed voluntarily and with a full understanding of its contents. Therefore, we reverse the part of the judgment dismissing Shirley's complaint and declaring that Lilly has title to the property as trustee for Shirley's children and remand to the trial court.
Since defendant signed the March 25, 1987 deed conveying title to the Lakewood property in order to obtain a divorce recognized by her religion and in anticipation of obtaining a civil divorce, the validity of that conveyance must be determined by the principles which govern the validity of settlement agreements relating to divorce proceedings. Our courts will enforce an agreement between spouses relating to alimony, child support and the distribution of marital assets only if it is fair, just and reasonable. Petersen v. Petersen, 85 N.J. 638, 642, 428 A.2d 1301 (1981); Melletz v. Melletz, 271 N.J. Super. 359, 368, 638 A.2d 898 (App. Div.), certif. denied, 137 N.J. 307, 645 A.2d 136 (1994). Consequently, any spousal agreement "may be set aside `when it is the product of fraud or overreaching by a party with power to take *223 advantage of a confidential relationship.'" Guglielmo v. Guglielmo, 253 N.J. Super. 531, 541, 602 A.2d 741 (App.Div. 1992) (quoting Dworkin v. Dworkin, 217 N.J. Super. 518, 523, 526 A.2d 278 (App.Div. 1987)). The State of New York, which was Shirley's and Israel's marital domicile when Shirley executed the February 1, 1987 agreement, follows similar principles. Christian v. Christian, 42 N.Y.2d 63, 396 N.Y.S.2d 817, 365 N.E.2d 849, 855-56 (Ct.App. 1977).
The New York courts have recognized a particular danger of overreaching by a husband with the power to withhold consent to a Get. Golding v. Golding, 176 A.D.2d 20, 581 N.Y.S.2d 4 (1992); Perl v. Perl, 126 A.D.2d 91, 512 N.Y.S.2d 372 (1987). In Perl v. Perl, supra, a husband and wife, both Orthodox Jews, obtained a civil divorce but deferred resolution of all financial matters pertaining to equitable distribution of marital property. At a subsequent proceeding, the parties arrived at a stipulation under which the wife agreed to deliver all of the remaining jointly owned securities to her former husband and to pay him $35,000 to compensate for jointly owned securities that she had previously sold and an additional $30,000. The wife also agreed to give her former husband a deed conveying her interest in the marital home, title to her car, and her engagement ring and other personal jewelry. Id., 512 N.Y.S.2d at 374. The wife alleged that her husband coerced her into agreeing to those provisions by threatening to withhold his consent to a Get. In concluding that the wife could seek to set aside this agreement on the basis of duress, the court recognized that "[t]he unequal allocation of power between spouses to terminate a religious marriage  particularly where the partners are of a Jewish faith  has received the attention of the courts...; the legislature ..., and the Executive...."[3]Id. at 375. The court also stated that "a divorce *224 settlement tainted by duress is void ab initio ..., not merely voidable, and is therefore not subject to ratification by the mere passage of time." Id. at 376.
In Golding v. Golding, supra, a husband repeatedly submitted documents to his wife containing terms of divorce favorable to him, and threatened not to grant her a Get unless she signed the documents. The court concluded that "it is evident plaintiff did not freely and voluntarily enter into the agreement but was compelled to do so by her husband's invocation of his power to refuse to give her a Jewish divorce." 581 N.Y.S.2d at 6. The court also noted:
[E]ven if the document(s) signed by plaintiff had, in fact, been the product of rabbinical arbitration, as defendant alleges, this still does not preclude the court from examining its substance and the procedure by which it was adopted so as to ascertain that there was no fraud, duress or overreaching. The judiciary must merely refrain from delving into matters concerning religious doctrine. At any rate, the Supreme Court properly found that there was no indication of rabbinical arbitration, simply that the rabbis had acted as go-betweens for the parties.
[Id. at 4.]
Although our State has not given this problem the same degree of attention as New York, one reported trial court decision adopts essentially the same approach as the New York courts. In Burns v. Burns, 223 N.J. Super. 219, 538 A.2d 438 (Ch.Div. 1987), a Jewish woman who had previously received a civil divorce asked her former husband, who by that time had himself remarried, to consent to a Get so that she could get remarried in conformity with Jewish law. The former husband indicated that he would only consent to the Get if the former wife agreed to invest $25,000 *225 for the benefit of their daughter. The court characterized this demand as "akin to extortion," id. at 224, 538 A.2d 438, and entered an order requiring the former husband "to submit to the jurisdiction of the `Beth Din,' and initiate the proceedings for a `get,'" id. at 226, 538 A.2d 438, without the payment of any money.
Applying these principles, we are satisfied that the overwhelming evidence at trial, reflected in the trial court's finding that Shirley was subjected to "extreme pressures," compels the conclusion that Shirley's assent to the marital settlement agreement, memorialized by the Get, was secured by duress, and that the March 25, 1987 deed conveying the Lakewood property to Lilly based upon this agreement is invalid. The evidence establishes that Shirley considered it imperative to obtain a Get, that she needed Israel's consent to obtain a Get, and that Israel conditioned his consent upon Shirley agreeing to an extremely one-sided marital settlement agreement. Under this agreement, Shirley was not entitled to any alimony, Israel retained substantially all the assets of the marriage including a business acquired during the marriage and the Lakewood property, and Shirley's father David Amsel assumed all responsibility for child support. The pressure imposed upon Shirley by her need for the Get was compounded by Herman's threats and Israel's actions in driving recklessly with their children in the car until she signed the agreement.
We turn next to the validity of the January 24, 1988 deed by which Shirley allegedly conveyed the property to Lilly as trustee. Since there is substantial credible evidence in the record to support the trial court's finding that this deed was not forged, we sustain that finding. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). We further note that although Shirley testified that her signature on this deed was forged, she acknowledged executing a document around the date of January 24, 1988, which established a trust for the benefit of her children with respect to the property.
*226 However, Shirley also testified that Herman presented the document to her without explaining its terms and that he pressured her to sign it. According to Shirley, Herman told her that if she did not sign the document, "I'm going to end up doing crazy things like killing or taking you to court." She further testified that Herman had not only threatened to kill her father but had actually made an attempt upon his life. The trial court failed to make any finding as to whether Shirley understood the deed conveying the Lakewood property to Lilly as trustee or whether she signed the deed voluntarily rather than under duress. Such findings were a prerequisite to a declaration of the validity of this instrument. See Oswald v. Seidler, 136 N.J. Eq. 443, 446, 42 A.2d 216 (E. & A. 1945) (indicating that for a trust deed to be valid, it must have been "fair, open, voluntary and well understood" by the grantor and she must have had "the benefit of adequate, independent advice."). Therefore, we are constrained to remand this matter for express findings on these issues. In addition, if the court concludes that Shirley did establish a trust in the property, the court should set forth its terms and duration for the guidance of the parties.
Accordingly, we affirm the part of the judgment dismissing Lilly's counterclaim but reverse the dismissal of Shirley's complaint and the determination that Lilly has title to the property as trustee for Shirley's children, and remand for further proceedings in conformity with this opinion.
NOTES
[1] Since three of the four parties to the litigation as well as other participants in the relevant events have the last name Segal, they are referred to in this opinion by their first names.
[2] This proceeding was terminated by Israel's death before entry of a judgment of divorce.
[3] New York has enacted legislation which requires a party seeking a divorce from a marriage solemnized by specified religious officiants to obtain a sworn statement from the moving party that he or she has taken or will take "prior to the entry of final judgment, all steps solely within his or her power to remove any barrier to the defendant's remarriage following the annulment or divorce." N.Y.Dom.Rel.Law § 253(2). In approving this legislation, the Governor of New York issued a memorandum which stated:

The bill was overwhelmingly adopted by the State legislature because it deals with a tragically unfair condition that is almost universally acknowledged.
The requirement of a get is used by unscrupulous spouses who avail themselves of our civil courts and simultaneously use their denial of a get vindictively or as a form of economic coercion.
[Governor's Memorandum of Approval, McKinney's 1983 Session Laws Ch. 979 at 2818, 2819, reprinted in Perl v. Perl, supra, 512 N.Y.S.2d at 375.]