666 So.2d 246 (1996)
Asma AKILEH, Appellant,
v.
Safwan ELCHAHAL, Appellee.
No. 94-04100.
District Court of Appeal of Florida, Second District.
January 12, 1996.
*247 Nancy Hutcheson Harris and Lee S. Damsker of Maney, Damsker, Harris & Jones, P.A., Tampa, for Appellant.
Jay P. Dinan of Purcell & Dinan, P.A., Tampa, for Appellee.
PATTERSON, Judge.
The wife, Asma Akileh, appeals from the final judgment of dissolution of marriage. She challenges the trial court's ruling that the parties' Islamic antenuptial agreement, known as a sadaq, is unenforceable for lack of consideration and because the parties did not have a "meeting of the minds." We reverse and remand for entry of a judgment in the wife's favor.
The wife grew up and was educated in Syria. She came to the United States in February 1990. She is of Islamic, or Moslem, faith. The husband, Safwan Elchahal, was born in Tripoli, Lebanon, and lived in Lebanon until 1979, when at the age of twenty, he came to the United States. The husband was also raised in the Moslem faith and culture.
Until her marriage, the wife had never socialized with a man outside the presence of her family. In the Islamic culture, a man's introduction of himself to the woman's family is considered a statement that he is willing to marry the woman and only then does the family allow a meeting between the two. When the husband proposed marriage to the wife, he recognized that she had the right to a sadaq. A sadaq is a postponed dowry which protects the woman in the event of divorce.
Approximately two months before the marriage, the husband met with the wife's father, Rahi Akileh, and raised the issue of the sadaq. Akileh expressed to his future son-in-law his desire that the sadaq for his daughter be paid in two parts, with an immediate payment of $1 and a deferred payment of $50,000. Upon completion of their negotiations, the husband and Akileh agreed to a sadaq of $50,001. The wife also agreed to the sadaq.
The sadaq was signed on December 26, 1991, and the parties were married in Tampa the following day. The certification of marriage incorporated the sadaq, which provided, "The sadaq being fifty thousand and one dollars of which one U.S. dollar advanced and fifty thousand dollars postponed." The certificate of marriage was executed by the bride, the bridegroom, two witnesses, and the Iman of the Islamic Center of Tampa Bay.
Approximately a year after the marriage, the wife contracted genital warts from the husband. The husband did not disclose to his wife before the marriage that in the past he had had genital warts. He believed that he had been cured, notwithstanding his repeated visits to the doctor to have re-occurring warts removed.
After the wife was diagnosed with genital warts, the marriage deteriorated. She left the parties' apartment in July 1993. At the wife's request, the parties tried counselling in June, July, and August 1993. On August 4, 1993, the husband advised his apartment complex that he was terminating the lease at the end of the month because he had decided to move back to Atlanta. When the wife found out that her husband was leaving the state, she filed for divorce on August 24, 1993. The husband served his answer and counterclaim for dissolution of marriage on October 28, 1993.
The case was tried on August 15, 1994. At trial, four witnesses testified as to the meaning of the Islamic word "sadaq." The wife's Islamic expert, Mazi Najjar, testified that generally a sadaq is similar to the concept of a dowry. He stated that only the wife could waive her right to receive the postponed portion of the sadaq. Najjar said that the wife's right to receive the sadaq was not negated if the wife filed for divorce.
*248 The wife testified that a wife's right to receive the postponed portion of the sadaq was absolute and not affected by the cause of a divorce. The wife stated that the exception was that a wife would forfeit the dowry if she cheated on her husband. The wife was unaware of any other instances in which the sadaq would be forfeited. Raji Akileh, the wife's father, also testified that the postponed portion of the sadaq is an absolute right of a wife to request from the husband whenever she wished and especially in the event of divorce.
The husband testified that he believed that the postponed portion of the sadaq was forfeited if a wife chose to divorce her husband. The husband's understanding of a sadaq stemmed from his sister's experience. His sister had previously sought a divorce and then pursued the postponed sadaq. An Islamic court ruled that she was not entitled to receive the sadaq since she had wanted the divorce. However, the husband testified that a woman seeking a divorce is entitled to her sadaq if she is abused. The husband admitted that he had never discussed the meaning of a sadaq with the wife or her father.
The trial court held that the sadaq was unenforceable for lack of consideration and because there was no meeting of the minds. The court stated that even if the parties attached sufficiently similar meanings to the sadaq to show that there was a meeting of the minds, the court would find that the sadaq was meant to protect the wife from an unwanted divorce. As such, the trial court would not order the husband to pay the wife the postponed sadaq since the wife was "the one that chose to pursue the divorce."
The issue of whether a sadaq is an enforceable antenuptial agreement is a matter of first impression in Florida; however, other jurisdictions have held that a religious antenuptial agreement may be enforceable in a court of law, if it complies with contract law. For instance, in Aziz v. Aziz, 127 Misc.2d 1013, 488 N.Y.S.2d 123 (Sup.Ct. 1985), the court specifically acknowledged its authority to require a party to fulfill the secular obligations of a religious antenuptial agreement. In Aziz, the parties entered into a mahr, a type of antenuptial agreement which required a payment of $5,032, with $32 advanced, and $5,000 deferred until divorce. The court held that the mahr conformed to New York contract requirements and "its secular terms are enforceable as a contractual obligation, notwithstanding that it was entered into as part of a religious ceremony." Aziz, 488 N.Y.S.2d at 124. See also Schwartz v. Schwartz, 153 Misc.2d 789, 583 N.Y.S.2d 716, 718 (Sup.Ct. 1992) ("courts may use `neutral principles of law' to resolve disputes touching on religious concerns"). Thus, we hold that Florida contract law applies to the secular terms of the sadaq.
Further, the court's determination that the contract was unenforceable is a legal issue which can be reviewed de novo by this court. Royal Oak Landing Homeowner's Ass'n v. Pelletier, 620 So.2d 786 (Fla. 4th DCA), review denied, 630 So.2d 1101 (Fla. 1993).
The trial court erred in finding that the wife gave no consideration in this contract. Under Florida law, marriage is sufficient consideration to uphold an antenuptial agreement. O'Shea v. O'Shea, 221 So.2d 223 (Fla. 4th DCA), cert. denied, 225 So.2d 919 (Fla. 1969). In addition, the parties agreed on the essential terms of the contract. The agreement was an antenuptial contract, executed in contemplation of a forthcoming marriage. The parties understood that a sadaq was to protect the wife in the event of a divorce. The parties agreed $1 was to be paid at the time of the execution of the agreement and $50,000 was postponed, to be paid if the parties divorced. The wife performed under the agreement by entering into the marriage.
The husband contends that the different interpretations placed upon the sadaq by the parties meant that there was no contract, i.e., no meeting of the minds. However, as the supreme court held in Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 302 So.2d 404, 408 (Fla. 1974):
A subsequent difference as to the construction of the contract does not affect the validity of the contract or indicate the minds of the parties did not meet with respect thereto. 17 C.J.S. Contracts § 31.
*249 Courts should be hesitant to hold a contract void for indefiniteness, particularly when one party has performed under the contract. Blackhawk Heating & Plumbing Co., 302 So.2d at 408.
The husband's subjective intent at the time he entered into the agreement is not material in construing the contract. Jackson v. Investment Corp. of Palm Beach, 585 So.2d 949 (Fla. 4th DCA 1991). At no time did the husband make known his unique understanding of a sadaq either during his negotiations with the wife's father or prior to signing the certificate of marriage.
Accordingly, we hold that the sadaq was valid and enforceable and we reverse and remand for the entry of a judgment in the wife's favor.
Reversed and remanded.
RYDER, A.C.J., and CAMPBELL, J., concur.