## Svitlana Vorontsova *vs.* Jaroslav Waronzov.

No. 08-P-821.

Bristol. March 11, 2009. - August 20, 2009.

Present: Graham, Dreben, & Sikora, JJ.

*Divorce and Separation,* Foreign judgment. *Comity.*

In a divorce action, a Probate and Family Court judge did not err in declining to recognize, under the doctrine of comity, a Ukrainian divorce certificate, in light of the judge's unchallenged specific findings that called into question the validity of the Ukrainian divorce (i.e., that the wife did not file or cause to be filed the divorce action in Ukraine purported to have been brought by her or otherwise obtain the foreign divorce decree), as well as the husband's proceeding on the theory that he did not obtain the Ukrainian divorce. [23-26]

Complaint for divorce filed in the Bristol Division of the Probate and Family Court Department on December 5, 2005.

The case was heard by *Anthony R. Nesi,* J., and motions to amend findings and for a new trial were also heard by him.

*Dana Alan Curhan* for the husband.

*Edward W. Wayland* for the wife.

Graham, J. We are asked to decide whether a judge of the Probate and Family Court erred by failing to recognize, under principles of comity, a Ukrainian divorce certificate purporting to divorce the parties, Svitlana Vorontsova (wife) and Jaroslav Waronzov (husband).[1] On the peculiar facts of this case, we conclude that the judge did not err in failing to recognize the foreign judgment and affirm the judgment of divorce nisi that was entered in the Probate and Family Court.

---

[1]The divorce certificate purports only to dissolve the parties' marriage and to establish the parties' surnames after the divorce. It contains no other provisions.

1. *Background.*[2] The husband is a software engineer and businessman who, since sometime in the 1990's, has owned businesses both in the Republic of Ukraine (Ukraine) and the United States. Although the husband has, and apparently continues, to split his time between the two countries, he moved to the United States "on a permanent basis" in the late 1990's.

In December, 1998, the parties were married in Ukraine (where the wife then lived) and, thereafter, the wife moved to the United States and resided with the husband. The parties first lived in Brooklyn, New York, but, in April or May of 2000, moved to Massachusetts after the wife secured employment that offered immigration sponsorship. The wife began working in the Commonwealth in August or September of 2000, and the husband commenced work in the Commonwealth in the spring of 2001.[3]

In early 2001, the parties were approved for a home mortgage and began to look for a house. On November 29 of that year they purchased and moved into a home in Attleboro. Title to the property was held jointly by the parties as tenants by the entirety. Meanwhile, the parties' relationship began to deteriorate and they separated in November, 2003.

On December 5, 2005, the wife filed a complaint for divorce in the Probate and Family Court alleging as grounds an irretrievable breakdown of the marriage and seeking an equitable division of the marital estate. The husband moved to dismiss the wife's complaint on the grounds that the wife, in August, 2001, had filed a divorce action against him in Ukraine (of which he was unaware at the time) and that the parties were, in fact, divorced in Ukraine on November 13, 2001.[4] Claiming that she had never sought a divorce from the husband in any court in any country

---

[2]We draw the facts primarily from the judge's detailed findings. We have not been provided with a trial transcript, the husband representing that because of the poor quality of the tapes of the trial, most of the testimony could not be transcribed. The husband has failed to avail himself of the procedure set out in Mass.R.A.P. 8(c), as amended, 378 Mass. 933 (1979).

[3]Both parties later experienced periods of unemployment while continuing to reside in the Commonwealth.

[4]The husband attached to his motion the Ukrainian divorce certificate and a translation thereof. We note that because the Ukrainian divorce certificate was dated approximately two weeks prior to the date the parties purchased their home in Massachusetts, it implicitly called into question whether the parties' home was a marital asset.

prior to filing her complaint in Massachusetts, that she had no knowledge of any such divorce proceedings, and that the Ukrainian divorce certificate relied upon by the husband was "some sort of forgery," the wife opposed the motion to dismiss. Noting that the attached divorce certificate did not comply with Mass.R.Dom. Rel.P. 44(a)(2)[5] and that there was an issue with jurisdiction, a judge denied the husband's motion without prejudice to his refiling it after obtaining proper documentation. A second motion by the husband to dismiss was subsequently denied by the trial judge, who also denied the husband's motion for reconsideration of that denial.

After a trial on November 10, 2006, the parties were divorced by a judgment of divorce nisi, which, among other things, ordered the husband to pay to the wife the sum of $50,000 as a division of the parties' property (which sum represented slightly less than one-half the net equity in the marital home). In his findings in support of the divorce judgment, the judge noted that the husband had requested again that the wife's complaint be dismissed in view of his claim that the wife had already obtained a divorce from him in Ukraine in 2001. With respect to that question, the judge (in the rationale section) found that although the Ukrainian divorce certificate did not comply with Mass.R.Dom.Rel.P. 44(a)(2),[6] it did comply fully with the 1961 Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents.[7] Continuing, the judge found that because this convention prevailed over State law, the divorce certificate came into

---

[5]Rule 44(a)(2) provides in part:

"A foreign official record, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof; or a copy thereof, attested by a person authorized to make the attestation, and accompanied by a final certification as to the genuineness of the signature and official position (i) of the attesting person, or (ii) of any foreign official whose certificate of genuineness of signature and official position relates to the attestation or is in a chain of certificates of genuineness of signature and official position relating to the attestation."

[6]We note that in his findings, under the section entitled status of the marriage, the judge initially stated that the Ukrainian divorce certificate does comply with rule 44(a)(2).

[7]The judge found that the United States became a party to this particular treaty in 1981; the Ukraine, in 2003. No other conventions or treaties, or parts thereof, have been called to our attention by the parties.

evidence as a "valid" and "authentic" document. In the judge's view, however, this divorce certificate was neither controlling nor dispositive, and, for the reasons set out in the margin, was not to be given "full faith and credit."[8] After the judgment issued, the husband filed motions to stay, to amend findings, and for a new trial, all of which were denied. The husband has appealed.[9]

2. *Discussion.* The husband asserts that because the parties were previously divorced in a court outside Massachusetts, the Probate and Family Court lacked jurisdiction to hear a subsequent action for divorce. He argues that "[w]here, as here, [he] satisfied all of the statutory requirements and presented a properly authenticated and certified foreign divorce decree, and where the

---

[8]The judge stated that he credited the wife's testimony that she had not left the United States since 1999 and did not leave the country in 2001 to seek the Ukrainian divorce. The judge found that although the wife's visa status as it existed in 2001 allowed her to leave the United States, she would not have been able to reenter the country without a new visa. The judge also found that despite the husband's claims to the contrary, there was no credible evidence that the wife sent anyone on her behalf to file for a divorce in Ukraine. In short, the judge was "satisfied that [the Ukrainian divorce] was not obtained by Wife or on Wife's behalf."

Noting that the husband traveled to and from Ukraine numerous times during the marriage and that there was no evidence that he was not in Ukraine either at the time of the filing of the Ukrainian divorce or its issuance, the judge posited that the most reasonable answer to the question who filed the Ukrainian divorce was that "someone obtained the divorce on Husband's behalf by impersonating Wife." The judge observed, however, that the husband vigorously objected to this suggestion and that the court was thus left without a specific answer as to who obtained the divorce.

At various points in his findings, the judge stated further that the Ukrainian courts did not have "jurisdiction" or "personal jurisdiction" over the husband or wife, that the parties were not legally divorced in the Ukraine, and that the parties were still married at the time of trial in November, 2006.

[9]In his original notice of appeal, the husband appealed only from the judgment of divorce nisi and the orders denying his three posttrial motions. With leave from a single justice of this court, the husband later filed an amended notice of appeal in which he sought to also appeal certain orders on complaints for contempt filed by the wife and (apparently) heard by the judge with the divorce action. In his brief, the husband states that notwithstanding his amended notice of appeal, "he has now elected to proceed with his original appeal and does not challenge any of the contempt rulings."

The husband failed to raise any argument on appeal regarding the order denying his motion to stay the orders contained in the judgment of divorce nisi. In any event, we note that the husband's appeal from that order is now moot in view of our decision.

judge rejected that decree based on conjecture and speculation unsupported by any facts in the record, [e.g., that the husband might have had someone pose as his wife on one of his trips to Ukraine,] the judge erred in refusing to give full faith and credit to the Ukrainian decree." The husband states that in the circumstances presented "the issue should have been deemed conclusively determined."

Because the divorce certificate in the present case was issued in a foreign nation, the doctrine of comity, rather than the full faith and credit clause of the United States Constitution, is invoked. See *Schiereck* v. *Schiereck,* 14 Mass. App. Ct. 378, 380 (1982), citing *Hilton* v. *Guyot,* 159 U.S. 113, 163-164 (1895). See also art. IV, § 1, of the United States Constitution ("Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State"). See generally Kindregan & Inker, Family Law and Practice § 28:4 (3d ed. 2002). "Under that doctrine, Massachusetts *generally* will recognize and enforce *valid* judgments rendered by a foreign court" (emphasis supplied). *Schiereck* v. *Schiereck, supra.* The doctrine, as we have suggested, admits to certain limitations that, for example, may bear on the jurisdiction of the foreign court or entity, or implicate important public policy considerations within the Commonwealth. See, e.g., G. L. c. 208, § 39 ("if an inhabitant of this commonwealth goes into another jurisdiction to obtain a divorce for a cause occurring here while the parties resided here, or for a cause which would not authorize a divorce by the laws of this commonwealth, a divorce so obtained shall be of no force or effect in this commonwealth"); Kindregan & Inker, Family Law and Practice § 28:4, at 114 (application of comity "rests on the premises that the first nation which acts or decides has jurisdiction to do so and the second nation is willing to voluntarily recognize it because it has no deep-seated public policy preventing it from doing so").[10] Fraud, in some circumstances, may also justify a judge in refusing to recognize the judgment of a foreign

---

[10]Although the judgment of a foreign nation is not governed by the full faith and credit clause, we may look to cases involving judgments from other States for guidance. See *Slessinger* v. *Secretary of Health & Human Serv.,* 835 F.2d 937, 940-941 n. 1 (1st Cir. 1987). Cf. *Poor* v. *Poor,* 381 Mass. 392, 393 (1980). As stated in *Yorke* v. *Yorke,* 2 Mass. App. Ct. 234, 238 (1974), "when one spouse has obtained a decree of divorce in another State and the other spouse has not appeared in the foreign proceedings, the nonparticipating

nation. See, e.g., *Litvaitis* v. *Litvaitis*, 162 Conn. 540, 544-545 (1972); *Gotlib* v. *Ratsutsky*, 83 N.Y.2d 696, 699-700 (1994); *Kalia* v. *Kalia*, 151 Ohio App. 3d 145, 155 (2002). See also Restatement (Second) of Conflict of Laws §§ 98 comment g, 115 & comments d and f (1971) ("A judgment will not be recognized or enforced in other states if upon the facts shown to the court equitable relief [including relief for fraud] could be obtained against the judgment in the state of rendition").[11] Our list of limitations is not to be viewed as exhaustive.

In the instant matter, it is apparent from the judge's findings that the parties litigated fully the question whether the Ukrainian divorce certificate should be recognized and given effect within the Commonwealth. We perceive nothing in the circumstances of this case that would preclude such an inquiry. Although the judge did not find explicitly that neither party was domiciled in Ukraine in 2001, that finding would seem implicit in the judge's jurisdictional, and other, findings. That aside, in view of the judge's specific findings (unchallenged in any meaningful way by the husband on the appeal) that call into question the validity of the Ukrainian divorce, i.e., that the wife did not file or cause to be filed the divorce action in Ukraine purported to have been brought by her or otherwise obtain the foreign divorce decree,[12] and

spouse may collaterally attack the validity of the foreign decree." See *Williams* v. *North Carolina*, 325 U.S. 226, 227-233 (1945) (noting, inter alia, that judicial power, or jurisdiction, to grant divorce is founded on domicil); *Fiorentino* v. *Probate Ct.*, 365 Mass. 13, 17 (1974) ("it is essential that the libellant's claim to domiciliary status in the forum State be a legitimate one; otherwise, the court's power to dissolve the marriage is a mere chimera vulnerable to a collateral attack in another jurisdiction"). See generally Katz, Family Law in America 82 (2003). However, "an appearance by the stay-at-home spouse in the foreign proceedings will ordinarily foreclose that spouse from subsequently attacking the foreign decree collaterally." *Yorke* v. *Yorke*, *supra*. See *Sherrer* v. *Sherrer*, 334 U.S. 343, 348-350 (1948).

[11]One appellate court has indicated that even where collateral attack on the ground of fraud would not be permitted in the courts of the foreign nation that rendered the judgment, the State court should nonetheless consider, under principles of comity, whether there are sufficient circumstances to warrant allowing a collateral attack. *Feinberg* v. *Feinberg*, 40 N.Y.2d 124, 128-129 (1976). See Restatement (Second) of Conflict of Laws, *supra* at § 115 comment f.

In the absence of a trial transcript, we are unable to determine whether evidence was presented at trial concerning the laws or practices of Ukraine.

[12]It is implicit in the judge's findings that the wife neither appeared nor

mindful, as the judge noted, that the husband has proceeded steadfastly in this matter on the theory that he did not obtain the Ukrainian divorce,[13] we cannot say on the record put before us that the judge erred in refusing to recognize the Ukrainian divorce certificate under the doctrine of comity. Consequently, the judgment of divorce nisi was properly entered.[14]

> *Judgment of divorce nisi affirmed.*
>
> *Orders denying motion to amend findings affirmed.*
>
> *Order denying motion for new trial affirmed.*

---

participated in the foreign proceedings. Indeed, there is no indication in the judge's findings that the wife had notice or knowledge of the proceedings. See *Williams* v. *North Carolina*, 317 U.S. 287, 298-299 (1942); *Caplan* v. *Donovan*, 450 Mass. 463, 468-471 (2008) (abuse prevention order). See and compare *Fiorentino* v. *Probate Ct.*, *supra*.

[13]Contrary to the husband's suggestion in his brief, the judge did not find that the husband, or someone at his direction, *must* have fraudulently obtained the Ukrainian judgment. Rather, as we have stated, the judge posited that that was the most reasonable "answer," apparently in view of the husband's numerous trips to Ukraine. The judge noted that the husband "vigorously oppose[d]" this interpretation, and ultimately acknowledged that he had no answer as to who actually obtained the divorce (except that it was not the wife).

[14]The wife's request for appellate attorney's fees and costs is denied.