HANLON, J.
Ali Niakosari (husband) appeals from a judgment of divorce nisi issued by the Probate and Family Court, challenging *809 only the judge's division of assets.[1] He contends that the judge erred by awarding his former wife, Masoumeh Ravizadeh (wife), a portion of the appreciation in value of the husband's premarital inherited properties in Tehran, Iran. The husband also argues that the judge erred in calculating the division of the Islamic marriage contract, called a "mahr." In the husband's view, the judge had no authority over the mahr, which was then the subject of litigation in Iran, and, further, the judge's calculation created a disproportionate division of marital assets in favor of the wife. We modify so much of the judgment as relates to the mahr; otherwise, we affirm the judgment.
Background. We recite facts from the judge's findings and the uncontradicted evidence, along with certain trial testimony, reserving recitation of some additional facts as they become relevant to the issues raised. The husband and wife were married in the State of New York on June 20, 2000, according to Iranian custom, which included the negotiation and execution of a "mahr" or marriage contract that, in this case, required the husband to pay to the wife 700 gold coins. During the marriage, the parties enjoyed an upper middle class lifestyle until the time of their separation in December, 2012.[2] The parties share legal and physical custody of their only child.
After filing her complaint for divorce in Massachusetts, the wife filed an action in the Iranian court to enforce the mahr.[3] ,[4] Both parties testified at trial in the Probate and Family Court. According to the husband, a mahr is an Iranian marriage contract negotiated between the couple and their families, for the purpose of providing financial support for the wife. Under Iranian law, the proceeds of the mahr are "the only financial money that can be recovered [by the wife] from a divorce and three months of alimony, that's it."[5] The wife testified only that the mahr is "a gift that the groom gives to the bride." On April 20, 2013, the court in Iran found in the wife's favor, and required the husband to pay to the wife, under the terms of the mahr, 700 gold coins. The husband appealed, and the verdict was upheld.[6] The husband appealed again to the Tehran Province Court of Review, which upheld the verdict. Still unsatisfied, the husband appealed to the Supreme Court of Iran; according to him, that action was pending at *810 the time of trial.[7]
On November 17, 2015, after five days of trial, the judgment of divorce nisi entered. In addition to orders regarding custody and child support, which are not at issue in this appeal, the judge essentially divided equally the parties' various joint and individual bank and retirement accounts. He ordered the sale of the individually and jointly held Cambridge condominium units and parking space, with the net proceeds equally divided, and awarded to the husband the exclusive right to his inherited property in Tehran, Iran. However, the judge ordered that the value of any appreciation in that property that occurred during the marriage be divided equally.
The history underlying the property in Tehran is significant here. The judge found that, when the husband was seventeen years old, he inherited from his deceased father certain property in Tehran, consisting of a one-sixth interest (with his siblings and his mother) in the parental home, along with complete ownership of two apartments and a flower shop contained in a building where his siblings and aunt own the other apartments.[8] The judge found credible the husband's trial testimony that his mother manages the units he owns, and receives all of the rental income derived therefrom.[9]
In addition, after finding, based on the verdict of the Iranian court, that the wife "owns 700 gold coins", the judge ordered the husband to pay into the court in Iran the value of the coins to satisfy that judgment. The judge then determined those funds to be "an asset of the wife," and therefore part of the marital estate and subject to division. The judge also ordered that, in the event the Supreme Court of Iran reverses the lower court verdict, the husband still is obligated to "pay an amount equal to one-half of the money to Wife to satisfy the liability." The judge did not order either party to pay alimony, finding that the wife had the ability to maintain her station and lifestyle through employment and her share of the divided marital assets.
Discussion. The equitable distribution statute "grants judges the authority to exercise a broad degree of discretion in assigning 'to either husband or wife all or any part of the estate of the other ....' " Adams v. Adams, 459 Mass. 361, 372-373, 945 N.E.2d 844 (2011), quoting G. L. c. 208, § 34. In reviewing a property division under G. L. c. 208, § 34, we proceed under a two-step analysis. "First, we examine the judge's findings to determine whether all relevant factors were considered (and whether irrelevant factors were disregarded). Next, we decide whether the rationale underlying the judge's conclusions is apparent and whether these flow rationally from the findings and rulings" (citations and quotations omitted). Hassey v. Hassey, 85 Mass. App. Ct. 518, 524, 11 N.E.3d 661 (2014). A judge's determinations as to "property division will not be reversed unless plainly wrong and excessive." Id.
*811 Here, it is clear that the judge considered all of the § 34 factors; the language of the judge's rationale and further findings provide a detailed explanation for his conclusions. In addition, in lieu of an order to pay alimony, the judge had broad discretion to assign to either the husband or the wife any part of the estate of the other, after consideration of the § 34 factors, including the wife's occupation, the opportunity for future income, and contributions during the marriage. See G. L. c. 208, § 34.
1. Tehran property. The husband first argues that the judge erred in awarding to the wife any portion of his inherited property in Tehran. The judge found that the Tehran property was "inherited by the Husband long before the marriage." He credited the husband's testimony that his mother exclusively handled the management of the property in Tehran, and received all of the rental income generated; neither the husband nor the wife were involved in the management of the properties, nor did they receive any income from the properties during the marriage. The judge determined that these "assets were never incorporated into the fabric of the marriage."[10] However, he awarded one-half of the appreciation in value of the properties to the wife.
The husband argues that, because his inheritance of the properties predates the marriage by many years, the wife has no right to any interest in the asset. We disagree. It is well established that "a party's 'estate' includes all property to which a party holds title, however acquired." Williams v. Massa, 431 Mass. 619, 625, 728 N.E.2d 932 (2000), citing Drapek v. Drapek, 399 Mass. 240, 243, 503 N.E.2d 946 (1987). Thus, the husband's interest in the Tehran properties comprised part of the marital estate. Once part of the marital estate, the judge then "had broad discretion to determine how to divide the entire estate equitably, including discretion not to divide the inherited and gifted assets between the parties" (citations omitted), but only the increase in the value of the property during the marriage. Williams, supra at 626, 728 N.E.2d 932.
Here, the judge's determination flows rationally from his findings, and his consideration of each of the § 34 factors. See Hassey, 85 Mass. App. Ct. at 524, 11" url="https://cite.case.law/citations/?q=11%20N.E.3d%20661">11 N.E.3d 661. We discern no error, and certainly no abuse of discretion, in his decision to award to the wife, as part of the divisible marital estate, an equal share of any appreciation in the value of the Tehran property that occurred during the marriage.
2. Mahr agreement. The husband next argues that the judge lacked jurisdiction to order him to pay one-half of the value of the 700 gold coins in the event the Supreme Court of Iran reverses the earlier judgment; for that reason, he maintains, the judge erred in calculating the division of the mahr proceeds. In his findings, the judge conceded that the court in Iran had jurisdiction over the mahr. However, he also found that, "because the mahr is an asset of the marriage, regardless of who prevails in the Supreme Court of Iran's Judgment, it is subject to equitable division in the Commonwealth of Massachusetts." We disagree.
*812 While no Massachusetts courts have reported cases addressing the issue of a mahr, or Islamic marriage contract, other States have done so. See Marriage of Obaidi & Qayoum, 154 Wash. App. 609, 226 P.3d 787 (2010), and cases cited. Since a mahr agreement may be enforced according to neutral principles of law, it may survive any constitutional challenge and may be enforceable as a contractual obligation. See id. at 616, 226 P.3d 787. See also Akileh v. Elchahal, 666 So.2d 246, 248-249 (Fla. Dist. Ct. App. 1996) (interpreting a sadaq, "a postponed dowry which protects the woman in the event of divorce").
In Marriage of Obaidi & Qayoum, 154 Wash. App. at 614-616, 226 P.3d 787, the court enforced a mahr agreement pursuant to its State law and said:
"A New Jersey case, Odatalla v. Odatalla, 355 N.J. Super. 305, 309 [810 A.2d 93] (Ch. Div. 2002), provides a helpful framework for considering the application of [S]tate law to a mahr agreement. In Odatalla, the trial court ordered the specific performance of the mahr agreement. The husband appealed, arguing that review of the mahr by a [S]tate court was precluded under the doctrine of separation of church and [S]tate. The husband also argued that the agreement was not a valid contract under New Jersey law. Id.
"The Odatalla court looked for guidance to Jones v. Wolf, 443 U.S. 595, 602-603 [99 S.Ct. 3020, 61 L.Ed.2d 775] (1979), which explained the 'neutral principles of law' approach that allows agreements to be enforced based on neutral principles of law, not religious doctrine. In Jones, a dispute over the ownership of church property was taken to a civil court in Georgia. The Court set aside the separation of church and state issues by applying the neutral principles of law doctrine. Justice Blackmun explained, 'We cannot agree, however, that the First Amendment requires the States to adopt a rule of compulsory deference to religious authority in resolving church property disputes, even when no issue of doctrinal controversy is involved.' Id. at 605 [99 S.Ct. 3020]. In other words, the Court determined that the controversy over the ownership of the property could be decided on neutral principles of law, not upon religious beliefs or policies. Id.
Based on Jones, the Odatalla court determined that the mahr did not violate the separation of church and state doctrine if the court could apply neutral principles of law to [ ] enforce the mahr. Odatalla, 355 N.J. Super. at 311 [810 A.2d 93]. The court concluded that the mahr could be enforced by applying neutral principles of contract law. Id. at 312 [810 A.2d 93]. Notably, the court found all the elements of a contract even though the husband argued that the mahr was too vague to apply because it did not state when the money would be due. Id. at 313 [810 A.2d 93]. Because the court determined that the mahr was simply a contract between two consenting adults, the court concluded that the mahr was not against public policy. Id. at 314 [810 A.2d 93].
"Here, we apply neutral principles of Washington law. ... Applying the neutral principles of contract law, we can resolve this case by using these neutral principles of law, not Islamic beliefs or policies. We apply Washington law to resolve the issues of the formation and validity of the agreement."
This analysis is persuasive and convinces us that we need not look beyond the agreement to determine the role of the mahr under Islamic law -- whether it is intended to provide support for the wife as the only thing she recovers from the marriage or *813 whether it is intended as an unencumbered gift. Further, the mahr enforcement action here proceeded entirely in Iran, and that judgment, upheld after two appeals and after action by the Supreme Court of Iran, will be a valid judgment rendered by a foreign court and is not a part of the underlying action here. Both parties have submitted the mahr to the jurisdiction of the courts in Iran and neither has argued that those courts should not decide the matter.[11] For that reason, the judgment of the Supreme Court of Iran will determine the outcome of the dispute.
Normally, we defer to judgments from another country as a matter of comity. "Under that doctrine, Massachusetts generally will recognize and enforce valid judgments rendered by a foreign court" (emphasis original). Vorontsova v. Waronzov, 75 Mass. App. Ct. 20, 24, 911 N.E.2d 774 (2009), quoting Schiereck v. Schiereck, 14 Mass. App. Ct. 378, 380, 439 N.E.2d 859 (1982).[12] "The doctrine [of comity], as we have suggested, admits to certain limitations that, for example, may bear on the jurisdiction of the foreign court or entity, or implicate important public policy considerations within the Commonwealth." Vorontsova, supra. See Schiereck, supra, citing Hilton v. Guyot, 159 U.S. 113, 163-164, 16 S.Ct. 139, 40 L.Ed. 95 (1895) (considered seminal case on comity). Cf. Charara v. Yatim, 78 Mass. App. Ct. 325, 331-332, 937 N.E.2d 490 (2010) (doctrine of comity requires that judgment be in "substantial conformity" with Massachusetts law; "substantial conformity" requires, inter alia, jurisdiction over parties and subject matter, and applied procedural and substantive law must be reasonably comparable to Massachusetts). In the circumstances of this case, where the parties have submitted to the jurisdiction of the Iranian courts and have not sought enforcement of the mahr in Massachusetts courts, we will apply the rule of comity and not disturb the ruling of the Iranian courts.
It was error, therefore, to order the husband to pay the mahr to the wife in the event that the Supreme Court of Iran finds in his favor; in the alternative, it was error to order the wife to split with the husband any judgment that she receives, if the Supreme Court of Iran affirms the earlier judgment in her favor. That is to say, if the Supreme Court of Iran does not enforce the mahr, the Probate and Family Court is without jurisdiction to do so; if the Supreme Court of Iran does enforce it, the Probate and Family Court is without jurisdiction to dispose of it differently.
Conclusion. The judge in this case was entitled to divide the entire estate by ordering what he believed to be the fairest and most equitable judgment considering all of the § 34 factors. We will not reverse the judgment unless it is "plainly wrong and excessive." Baccanti v. Morton, 434 Mass. 787, 793, 752 N.E.2d 718 (2001). We exercise our discretion to delete that paragraph of the judgment which, essentially, orders the parties to split the mahr as part of the marital estate. The portion of the judgment that orders division of the mahr is vacated. In all other respects, the judgment is affirmed.
So ordered.

Both the husband and wife filed notices of appeal from the judgment, but the wife never entered her appeal in this court. Her appeal is therefore not before us. Mass. R. A. P. 10 (a) (1), as amended by 435 Mass. 1601 (2001).

During the course of this litigation, the marital home was sold by court order and the net proceeds divided into thirds; one third went to the wife, one third to the husband, and one third was placed in escrow to pay certain expenses.

Neither a copy of the mahr nor the Iranian marriage license were included in this record.

The wife did not include in her underlying complaint for divorce in the Probate Court a request to enforce the mahr.

The husband testified that selecting gold coins as payment under the mahr ensured that the value of the coins would appreciate over time, as the value would "grow like stocks"; where, as here, there is a long-term marriage, "if you assign a real value, the real value doesn't grow. If you assign a commodity that grows, any time that the woman seeks to recover the [m]ahr, she will get [a] benefit from the growth of the [m]ahr."

Neither the docket nor the record from the Iranian litigation is included in this record. For that reason, it is not clear what tribunal heard the first appeal.

At oral argument, the parties informed us that the case remained unresolved.

The husband asserts that his father gave these properties to him when he was nine years old. This assertion is a distinction without a difference under our analysis.

At the time of trial, the parties were unable to agree on a valuation of that property; pursuant to the judgment, the parties are to select jointly an appraiser to arrive at a value, then "equally split any increase in property valuation during the time of the marriage." The judge ordered that the conversion rate of the Central Bank of the Islamic Republic of Iran is to govern when converting to United States dollars.

We rely exclusively on the judge's fact finding here, as only select portions of the trial transcripts are included in this record. See Pierce v. Pierce, 455 Mass. 286, 293, 916 N.E.2d 330 (2009) ("The standard of review reflects substantial, but not unlimited, deference to the judge who saw the witnesses and heard the evidence"). We note that it is the appellant's burden to produce a full record on appeal. See Mass. R. A. P. 8 (b) (1), as amended by 430 Mass. 1603 (1999).

In fact, as noted above in n. 4, the wife sought enforcement of the mahr in Iran and did not request the Probate and Family Court to enforce it; the husband has argued that the Probate and Family Court is without authority to modify it.

Where a judgment issues in a foreign country, "the doctrine of comity, rather than the full faith and credit clause of the United States Constitution, is invoked." Vorontsova, supra.